UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ABRAHAM FRAENKEL, et al.,<br><br>  *Plaintiffs*,<br><br> v.<br><br>STANDARD CHARTERED BANK,<br><br>  *Defendant*. | Case No. 24-cv-4484 (RA) |
| SHMUEL BRAUNER, et al.,<br><br>  *Plaintiffs*,<br><br> v.<br><br>STANDARD CHARTERED BANK,<br><br>  *Defendant*. | Case No. 24-cv-05788 (RA) |

**DEFENDANT STANDARD CHARTERED BANK'S REPLY MEMORANDUM
OF LAW IN SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................................ 1

ARGUMENT .............................................................................................................................. 1

    I.     PLAINTIFFS FAIL TO ALLEGE SCB'S GENERAL AWARENESS OF ANY ROLE IN ACTS OF INTERNATIONAL TERRORISM ....................... 1

    II.    PLAINTIFFS FAIL TO ALLEGE THAT SCB KNOWINGLY PROVIDED SUBSTANTIAL ASSISTANCE TO THE ATTACKS .................... 6

    III.   THE 2010 AND 2011 ATTACKS ARE UNTIMELY ........................................... 9

    IV.   PLAINTIFFS HAVE NOT ESTABLISHED PERSONAL JURISDICTION ............................................................................................. 11

CONCLUSION ........................................................................................................................ 12

CERTIFICATE OF COMPLIANCE ....................................................................................... 13

# TABLE OF AUTHORITIES*

**Page(s)**

**Cases**

*Bartlett v. Société Générale de Banque Au Liban SAL*,
 2020 WL 7089448 (E.D.N.Y. Nov. 25, 2020)......................................................................8

*Bathiard v. Islamic Republic of Iran*,
 317 F. Supp. 3d 134 (D.D.C. 2018) ...............................................................................9, 10

*Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of California*,
 522 U.S. 192 (1997)..........................................................................................................10

*Bernhardt v. Islamic Republic of Iran*,
 47 F.4th 856 (D.C. Cir. 2022)....................................................................................4, 8, 9

*Bonacasa v. Standard Chartered PLC*,
 2023 WL 7110774 (S.D.N.Y. Oct. 27, 2023).....................................................................8

*Cabrera v. Black & Veatch Special Project Corp.*,
 2024 WL 1435146 (D.D.C. Mar. 28, 2024).....................................................................10

*Credit Suisse Sec. (USA) LLC v. Simmonds*,
 566 U.S. 221 (2012)..........................................................................................................11

*Freeman v. HSBC Holdings PLC*,
 413 F. Supp. 3d 67 (E.D.N.Y. 2019) ...............................................................................11

*Freeman v. HSBC Holdings PLC*, 465 F. Supp. 3d 220 (E.D.N.Y. 2020),
 *aff'd on other grounds*, 57 F.4th 66 (2d Cir. 2023)........................................................2, 6

*Halberstam v. Welch*,
 705 F.2d 472 (D.C. Cir. 1983)...........................................................................................9

*Honickman v. BLOM Bank SAL*,
 6 F.4th 487 (2d Cir. 2021) ...........................................................................1–2, 5, 6, 8–9

*Kaplan v. Lebanese Canadian Bank, SAL*,
 999 F.3d 842 (2d Cir. 2021)..........................................................................................3, 5

*King v. Habib Bank Ltd.*,
 2022 WL 4537849 (S.D.N.Y. Sept. 28, 2022)....................................................................8

*O'Sullivan v. Deutsche Bank AG*,
   2019 WL 1409446 (S.D.N.Y. Mar. 28, 2019) ............................................................. 2, 3

*Sheikh v. Republic of Sudan*,
   172 F. Supp. 3d 124 (D.D.C. 2016) ........................................................................... 10

*Siegel v. HSBC N. Am. Holdings, Inc.*,
   933 F.3d 217 (2d Cir. 2019) ....................................................................................... 4, 9

*Strauss v. Credit Lyonnais, S.A.*,
   2007 WL 2296832 (E.D.N.Y. Aug. 6, 2007) ............................................................. 10

*Sucesores de Don Carlos Nunez y Dona Pura Galvez, Inc. v. Societe Generale, S.A.*,
   2023 WL 2712505 (S.D.N.Y. Mar. 30, 2023), *aff'd sub nom.
   Moreira v. Societe Generale, S.A.*, 125 F.4th 371 (2d Cir. 2025) ............................. 11

*Twitter v. Taamneh*,
   598 U.S. 471 (2023) ........................................................................................ 1, 6, 7, 9

*Zobay v. MTN Grp. Ltd.*,
   695 F. Supp. 3d 301 (E.D.N.Y. 2023) ................................................................ 3, 5, 8

\**Unless otherwise stated, all internal case citations and quotation marks are omitted and all emphasis is added.*

**INTRODUCTION**

Plaintiffs' Opposition, ECF No. 43 ("Opp."), confirms the Amended Complaint's ("AC")[1] shortcomings under Supreme Court and Second Circuit precedents. These precedents have rejected Plaintiffs' core argument that SCB's violations of U.S. sanctions against Iran foreseeably resulted in acts of terrorism between 2010 and 2019. Plaintiffs' attempt to window dress this rejected theory—in the form of lengthy and irrelevant narratives regarding Iran's economy and terrorist activities, supposed "warnings" to the banking sector, and allegations from a failed *qui tam* action—does not remedy the lack of a nexus between SCB's sanctions violations and the Attacks.

*Twitter, Inc. v. Taamneh* is clear: "[t]he more attenuated the nexus, the more courts should demand that plaintiffs show culpable participation through *intentional* aid that substantially furthered the [terrorist act]." 598 U.S. 471, 506 (2023). The AC contains no well-pleaded allegations that SCB intentionally aided the Attacks and does not link a single banking transaction involving SCB to any FTO, much less to the disparate Attacks alleged in this case. The AC fails to state an ATA claim.

The Opposition also confirms that the 2010 and 2011 Attacks are time-barred and that Plaintiffs have failed to establish personal jurisdiction.

**ARGUMENT**

**I. PLAINTIFFS FAIL TO ALLEGE SCB'S GENERAL AWARENESS OF ANY ROLE IN ACTS OF INTERNATIONAL TERRORISM**

Plaintiffs fail to plausibly allege that SCB was generally aware it was playing a role in illegal activity from which terrorist attacks were foreseeable. *See Honickman v. BLOM Bank*

---

[1] Capitalized or abbreviated terms not defined here are defined in SCB's Memorandum of Law in Support of Motion to Dismiss, ECF No. 40 (the "MTD").

*SAL*, 6 F.4th 487, 496 (2d Cir. 2021).  Plaintiffs claim to have met this standard by focusing on allegations concerning SCB's banking services between 2005 and 2012 to a UAE corporation, Caspian, also referred to in the AC as "the Iranian Petrochemical Company," which in turn was owned by an Iranian national.  *See* Opp. at 14–20.  But Plaintiffs present no well-pleaded allegations that SCB knew that Caspian was an IRGC front, let alone that in providing banking services to Caspian, SCB knew it was playing a role in terrorist activity from which the Attacks were foreseeable.

*First*, the Opposition ignores *O'Sullivan* and *Freeman*, which rejected liability based on similar allegations that SCB and other banks provided services to Iran-linked customers in violation of U.S. sanctions.  There, as here, the plaintiffs alleged links to Iran's oil and banking sectors and claimed that the bank defendants knew their clients were "agents" or "proxies" for Iran and the IRGC.  *O'Sullivan v. Deutsche Bank AG*, 2019 WL 1409446, at *10 (S.D.N.Y. Mar. 28, 2019); *Freeman v. HSBC Holdings PLC*, 465 F. Supp. 3d 220, 232 (E.D.N.Y. 2020).  The claims failed because "[a]llegations regarding Iran's status as a state sponsor of terrorism, as well as allegations regarding the purpose of U.S. sanctions are, on their own, insufficient to allege plausibly that Defendants were generally aware that they had taken a role in the attacks that killed or injured Plaintiffs."  *O'Sullivan*, 2019 WL 1409446, at *10; *Freeman*, 465 F. Supp. 3d at 231.  Here, Plaintiffs argue that "SCB's general awareness that it was playing a role in illegal activity" can be inferred from its employees' warnings about "reputational damage" from the bank's Iran business, as well as its "obfuscat[ion]" of transactions with Iranian customers.  Opp. at 16.  But this amounts to no more than an argument that SCB was aware that it was violating U.S. sanctions, *not* that it was aware that it had assumed a role in terrorist activity.  *See O'Sullivan*, 2019 WL 1409446, at *10.  And Plaintiffs' attempt to establish general awareness

based on SCB's alleged "subversion of U.S. counterterrorism controls on behalf of [Iranian] banks" is identical to the argument rejected in *O'Sullivan*. *Compare O'Sullivan*, 2019 WL 1409446, at *1 n.2 (defining Iran's "Agents and Proxies" to include Bank Markazi, Bank Melli, and Bank Saderat), *with* AC ¶ 4 (describing same banks as "major banks affiliated with Iran's Terrorist Sponsors").

*Second*, Plaintiffs plead no facts that SCB knew that any one of its customers was a "front" for the IRGC or any terrorist group, much less that SCB was aware of aiding any such group in terrorist activities. This stands in contrast with cases like *Zobay* and *Kaplan* that Plaintiffs rely on. Opp. at 18–20. In *Kaplan*, Hezbollah "openly, publicly, and repeatedly acknowledged" that the defendant bank's direct customers were "integral" members of Hezbollah. *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 864 (2d Cir. 2021). *Zobay* sustained claims based on plausible allegations that the defendant's *joint venture partner* had shareholders tied to the IRGC and terrorism in public reports from *before and during* the business relationship, and that the joint venture agreement, signed *in the presence of* "*notorious IRGC terrorists*," mandated "cooperation" on "defensive, security and political objectives." *Zobay v. MTN Grp. Ltd.*, 695 F. Supp. 3d 301, 338–42 (E.D.N.Y. 2023).

Here, while Plaintiffs blithely assert that public sources "connected SCB's Iranian oil business customers to the terrorism machine," Opp. at 16, not one of the cited sources mentions any SCB customer. Plaintiffs' citations to generalized sources about Iran's sponsorship of terrorism and "interests" in the oil industry to allege the IRGC's "extensive economic operations and ties to the oil sector," AC ¶ 773, do not establish SCB's knowledge that *any* oil company owned by an Iranian national must somehow be a "front" for the IRGC. While Plaintiffs claim that Caspian's "ultimate beneficial owner was the Iranian Government" based on two summary

responses in a due diligence questionnaire cited in the 2019 OFAC Settlement, Opp. at 10 (citing AC ¶¶ 580–81), the 2019 OFAC Settlement simply does not support this inference, and instead states "the petrochemical company" was "owned by an *Iranian national ordinarily resident in Iran.*" 2019 OFAC Settlement ¶ 7 (ECF No. 41-3). In any event, claiming that Caspian, or any other SCB client, may have been government-owned does not bridge the gap because it does not tie SCB's banking services to the IRGC's funding of terrorism. *See Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 868 (D.C. Cir. 2022) (rejecting argument that Iran's sponsorship of terrorism was sufficient to establish defendant bank's awareness that, by transacting with nationalized Iranian banks, it was supporting terrorist attacks, because Iran "invariably maintain[s] legitimate government activities"). In addition, the 2019 OFAC Settlement contains no reference to the IRGC, and none of the Agreements includes any finding that SCB engaged in transactions that facilitated or were connected to any terrorist activity.

Plaintiffs' effort to rely on a chain of inferences based on industry or government affiliation, without linking SCB's customers and their banking activities to terrorists, is not enough under Second Circuit's precedent. The *Siegel* complaint cited numerous news articles and U.S. government reports linking HSBC's *client* to terrorist organizations and acknowledgements in emails by HSBC employees that "[the client's] account may have been used by terrorists." *Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217, 220 (2d Cir. 2019). Nevertheless, general awareness was not established because the plaintiffs failed to plausibly allege that "most, or even many, of [the client]'s banking activities are linked to terrorists," or that "HSBC provided banking services for any transactions relating to the [relevant attacks]," and because the banking relationship ceased ten months before the terrorist attacks. *Id.* at 224.

Here, no reports link Caspian to any terrorist activity, and the banking relationship ceased years before all but three time-barred Attacks. *See* MTD at 17.

*Third*, the AC supports no plausible inference that any of SCB's customers "were so closely intertwined with [any FTO's] violent terrorist activities that one can reasonably infer [SCB] was generally aware of its role in unlawful activities from which the attacks were foreseeable while it was providing financial services," as separately required under *Honickman*. 6 F.4th at 501; *see also Kaplan*, 999 F.3d at 849, 860–61 (finding general awareness because defendant bank's customers served as Hezbollah's bank, creditor, and investment arm and were therefore "closely intertwined with Hizbollah's violent terrorist activities"). In lieu of allegations that Caspian was directly "intertwined" with "violent terrorist activities," Plaintiffs argue only that "by 2009, Iran's oil and gas sector" was "weaponized to fund terrorist attacks," such that "businesses like [Caspian] . . . were little more than commercial fronts for terrorism." Opp. at 18. This conclusory allegation falls far short of the mark set in *Zobay*, where the court credited allegations tying the defendant's *joint venture* partners *not only* to "the IRGC's more outwardly benign activities (economic investment)" but also directly to the military (*i.e.*, terrorist) side of the IRGC through the procurement of military and other prohibited technologies. 695 F. Supp. 3d at 340–41.

Nor do any of Plaintiffs' other allegations—discussed in passing by the Plaintiffs, *see* Opp. at 20–22—rescue Plaintiffs' general awareness argument. Plaintiffs fail to respond to any of the MTD's arguments highlighting the tenuousness of the EAGL and Tajco Ltd. allegations, which relate to banking services not alleged to be for terrorist purposes and that occurred prior to EAGL's 2018 SDGT designation, AC ¶¶ 665, 676, and Tajco's 2010 SDGT designation, AC ¶¶ 381, 679, and years before all but one Attack (which is time-barred). These allegations are

also jurisdictionally deficient, *see infra* Section IV, and should therefore be disregarded. The Opposition also confirms that Plaintiffs' allegations about Elyassi's ties to the "Terrorist Sponsors" are based on his alleged "Iran-based sanctions evasion operation," Opp. at 21, along with speculation that he could not have engaged in this operation "without the IRGC's and SLO's knowledge." AC ¶ 809. None of these allegations supports an inference that any of SCB's customers were so closely intertwined with the FTOs that committed the Attacks that one can plausibly infer that SCB was aware of its purported role in terrorist activities. *Honickman*, 6 F.4th at 503; *see also Freeman*, 465 F. Supp. 3d at 230 ("[I]t is not enough for a defendant-bank to be aware that . . . the organization or entity to which it is providing financial services supports terrorist organizations; the bank must be aware that through its own conduct, whether legal or illegal, it is assuming a role in actual terrorist activity.").

## II. PLAINTIFFS FAIL TO ALLEGE THAT SCB KNOWINGLY PROVIDED SUBSTANTIAL ASSISTANCE TO THE ATTACKS

In contrast to Plaintiffs' contention that the touchstone of aiding and abetting liability is "foreseeability," the Supreme Court in *Twitter* held that the "conceptual core" of aiding and abetting liability under the ATA is "that the defendant consciously and culpably participate[d] in a wrongful act so as to help make it succeed." *Twitter*, 598 U.S. at 493. Plaintiffs' allegations fail to establish *either* SCB's culpable participation *or* that SCB substantially furthered the Attacks. Even under Plaintiffs' fabricated "foreseeability" test, Plaintiffs' allegations do not support the inference that providing banking services to Caspian in 2012 would foreseeably lead to terrorist attacks up to seven years later.

***Culpability.*** Plaintiffs again rely on SCB's violation of U.S. sanctions to claim SCB was "extremely culpable." Opp. at 23–24. Allegations that SCB violated sanctions do not alone

suggest that "[SCB] culpably participated in [the Attacks], so as to make [them] succeed." *Twitter*, 598 U.S. at 493.

Plaintiffs argue that they need not establish SCB's intent to support the FTOs because SCB committed "affirmative misconduct," unlike the "passive nonfeasance" found to be insufficient in *Twitter*. Opp. at 24. Plaintiffs' position misstates *Twitter*, which does not excuse plaintiffs from plausibly alleging culpable participation merely by pointing to any form of affirmative misconduct; rather, a nexus to the Attacks is required. *Twitter*, 598 U.S. at 497. In fact, in *Twitter* itself, the plaintiffs sought to hold Google liable for aiding and abetting ISIS's attacks on the theory that Google engaged in affirmative misconduct by "review[ing] and approv[ing] ISIS videos on Youtube as part of its revenue-sharing system and thereby shar[ing] advertising revenues with ISIS." *Id.* at 505. The Court found this allegation lacking because the plaintiffs failed to tie those actions to the attack at issue. *Id.* at 505–06.

Here, as in *Twitter*, "because of the distance between [SCB's] acts [] and the [attack that injured plaintiffs], [Plaintiffs] would need some other very good reason to think that [SCB] [was] consciously trying to help or otherwise participate in [the Attacks]." *Id.* at 500. Plaintiffs' reliance on sanctions violations to bridge that gap is the same theory rejected by multiple courts in this Circuit that sanctions violations standing alone are sufficient to establish a defendant's general awareness of its role in terrorist conduct. *See supra* at 2–3.

**Nexus.** Where, as here, there is no intentional assistance to terrorism, *Twitter* requires a heightened nexus between the Attack and the defendant's assistance. 598 U.S. at 506. Plaintiffs rely on an attenuated and speculative chain to analogize SCB's dealings with Caspian to a defendant that "has a terrorist front as a business partner" and suggest that this conclusory "terrorist front" label is dispositive of nexus. Opp. at 25. As summarized above, however,

Plaintiffs have failed to plausibly allege SCB's awareness that Caspian was connected to Iran's "Terrorist Sponsors" at all, let alone that Caspian was a "front" for those entities. *See supra* at 3–5. Plaintiffs' invocation of *Zobay* and *Bartlett* fails here too. *See Zobay*, 695 F. Supp. 3d at 346–48 (finding sufficient nexus where defendant "entered into a joint venture with a known terrorist front" whose "ties to the IRGC were well-reported" and where defendant procured embargoed communications technologies used to detonate weapons and track enemy operatives); *Bartlett v. Société Générale de Banque Au Liban SAL*, 2020 WL 7089448, at *9–10, *12 (E.D.N.Y. Nov. 25, 2020) (noting that "contemporaneous mass media" reported that customers "openly and notoriously associated with Hezbollah," and that customers had no legitimate activities, only "fundrais[ing] and recruit[ing]" for terrorist attacks). All of the other cases cited by Plaintiffs similarly required more than the flow of money through multiple intermediaries to establish a nexus. *See King v. Habib Bank Ltd.*, 2022 WL 4537849, at *1, *8–10 (S.D.N.Y. Sept. 28, 2022) (defendant bank continued providing banking services to intermediary with known Al-Qaeda ties after being specifically warned about customer's Al-Qaeda ties); *Bonacasa v. Standard Chartered PLC*, 2023 WL 7110774, *13–14 (S.D.N.Y. Oct. 27, 2023) (fertilizer from defendant's client was used in improvised explosive devices that injured plaintiffs).

Plaintiffs incorrectly claim that SCB is requiring specific funds to be traced to each Attack and argue that the fungibility of money is enough to establish nexus. Opp. at 26. But a nexus is missing here because of the attenuated chain separating any banking services by SCB and the Attacks. *See Bernhardt*, 47 F.4th at 871 (finding no substantial assistance where plaintiffs "alleged that HSBC facilitated over $19 billion in transactions with Iranian institutions" but "fail[ed] to allege how much (if any) of that money indirectly flowed to al-Qaeda"). And moreover, the fungibility of money is insufficient to meet even Plaintiffs' fabricated

"foreseeability" test. *See Honickman*, 6 F.4th at 498–99. At bottom, Plaintiffs rely on allegations that SCB provided banking services in violation of U.S. sanctions. Such allegations were held insufficient to plead "substantial assistance" by the Second and D.C. Circuit, notwithstanding billions of dollars in sanctions-violating transactions processed for Saudi and Iranian banks known to have terrorist links. *See, e.g.*, *Siegel*, 933 F.3d at 225; *Bernhardt*, 47 F.4th at 871.

Plaintiffs' other allegations regarding the vast majority of banking services rely on even more attenuated and speculative chains of inference. *See* MTD at 23–24.

***Systemic and Pervasive Assistance.*** In the alternative, Plaintiffs simply repeat their arguments regarding SCB's sanctions violations to claim that SCB's conduct is so systemic and pervasive that SCB should be liable for any terrorist act committed by the "Terrorist Sponsors." Opp. at 27. But under *Twitter*, Plaintiffs "must allege that defendants so systemically and pervasively assisted [Hezbollah, Hamas, Palestinian Islamic Jihad, and/or Jaysh al-Mahdi] that [SCB] could be said to aid and abet every single [] attack" committed by those groups. 598 U.S. at 501. Viewed in this light, the allegations here fall short. There is no allegation that, through its dealings with specific non-FTOs, SCB "intentionally associated" itself with the FTOs, "affirmatively gave aid" that would assist each and every attack committed by an Iran-affiliated FTO, or "formed a near-common enterprise" with the FTOs, as Linda Hamilton did with her live-in partner in *Halberstam*. *Twitter*, 598 U.S. at 502; *Halberstam v. Welch*, 705 F.2d 472, 487–88 (D.C. Cir. 1983).

## III. THE 2010 AND 2011 ATTACKS ARE UNTIMELY

Plaintiffs' Opposition fails to rebut the established principle that "[t]he date the cause of action arose means the date the factual events giving rise to the claim occurred . . . . [*i.e.*,] when the attack at issue occurred." *Bathiard v. Islamic Republic of Iran*, 317 F. Supp. 3d 134, 143

(D.D.C. 2018), *rev'd and vacated on other grounds sub nom. Maalouf v. Islamic Republic of Iran*, 923 F.3d 1095 (D.C. Cir. 2019); *see also Strauss v. Credit Lyonnais, S.A.*, 2007 WL 2296832, at *6 (E.D.N.Y. Aug. 6, 2007) (stating in ATA context that "a cause of action accrues on the date a party is injured").

Plaintiffs pull the "complete and present" language from *Bay Area Laundry* out of context to claim that a new cause of action sets the date of accrual for all past injuries. Opp. at 28. *Bay Area Laundry* simply stands for the proposition that a statute of limitation does not commence until the final *factual* prerequisite for a suit is met. *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of California*, 522 U.S. 192, 202 (1997) (pension statute did not begin to run on date that employer withdrew from pension plan because employees had to wait for several additional factual events); *see also Sheikh v. Republic of Sudan*, 172 F. Supp. 3d 124, 131 (D.D.C. 2016) (rejecting argument under *Bay Area Laundry* that terrorism cause of action accrued on date of statute's amendment rather than date of an attack); *Bathiard*, 317 F. Supp. 3d at 143 (same). In contrast, Plaintiffs' sole support is an out-of-Circuit decision concerning a Rule 15 relation-back issue, which only mentioned the JASTA accrual period in passing. *See Cabrera v. Black & Veatch Special Project Corp.*, 2024 WL 1435146, at *5 (D.D.C. Mar. 28, 2024); Opp. at 28. Plaintiffs' reading also conflicts with Congress's history of clearly expressing when an amendment to the ATA allows for additional time to file an otherwise time-barred claim. *See* MTD at 26 n.11.

Nor does the 2019 DPA toll Plaintiffs' claims. SCB's sanctions violations, including as to Iranian banks and Iranian corporate customers, as well as processing of oil-related payments, became public in 2012. SOF ¶¶ 22, 40 (ECF No. 41-1). Plaintiffs do not plausibly allege any link between the Attacks and SCB's banking services revealed by the 2019 DPA. As the MTD

notes, a number of Plaintiffs timely filed claims relating to those violations under the ATA and JASTA years ago. MTD at 27. Nor does the AC plausibly allege a "fraud" that supports tolling, or that in waiting over five years from the 2019 DPA they "(1) . . . pursue[d][their] rights diligently, and (2) that some extraordinary circumstances stood in [their] way." *Credit Suisse Sec. (USA) LLC v. Simmonds*, 566 U.S. 221, 227 (2012).

## IV. PLAINTIFFS HAVE NOT ESTABLISHED PERSONAL JURISDICTION

Plaintiffs do not contest the lack of general jurisdiction over SCB. Opp. at 30. Their sole basis for claiming specific personal jurisdiction in New York centers on U.S. dollar transactions processed through the New York banking system. *Id*. For the reasons explained above and in the MTD, Plaintiffs' injuries do not arise out of SCB's forum contacts and their claims therefore must be dismissed for lack of personal jurisdiction. *See* MTD at 28–29. Moreover, Plaintiffs' allegations as to EAGL and Tajco Ltd. lack even this tenuous connection to New York. The AC contains no well-pleaded allegations of transactions processed by SCB for either client through the United States banking system; instead, the transactions alleged in the AC were either processed by a non-party (SCB's Gambian subsidiary, a separate legal entity) or have no stated nexus to the United States. AC ¶¶ 665, 679; *see* Declaration of Carmine D. Boccuzzi, Jr., dated February 11, 2024 (attaching publicly available information regarding SCB Gambia); *Freeman v. HSBC Holdings PLC*, 413 F. Supp. 3d 67, 80–81 (E.D.N.Y. 2019) (no personal jurisdiction where transactions were not "processed through the United States banking system or banks in New York"); *Sucesores de Don Carlos Nunez y Dona Pura Galvez, Inc. v. Societe Generale, S.A.*, 2023 WL 2712505, at *7 (S.D.N.Y. Mar. 30, 2023) (no personal jurisdiction based on conduct of foreign affiliate).

## CONCLUSION

For the foregoing reasons, the Court should dismiss the AC in its entirety with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(6), 8(a), and 12(b)(2).

Dated: February 11, 2025
      New York, New York

Respectfully submitted,

*/s/ Carmine D. Boccuzzi, Jr.*
Carmine D. Boccuzzi, Jr.
Abena Mainoo
Leila Mgaloblishvili
cboccuzzi@cgsh.com
amainoo@cgsh.com
lmgaloblishvili@cgsh.com
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
T: 212-225-2000
F: 212-225-3999

*Attorneys for Defendant Standard Chartered Bank*

# CERTIFICATE OF COMPLIANCE

I certify that this document complies with the word-count limitations contained in Rule 7.1(c) of the Local Rules of the United States District Court for the Southern and Eastern District of New York and Section 4(A) of this Court's Individual Rules & Practices in Civil Cases because, excluding the parts of the document exempted by those rules, it contains 3,489 words, as calculated by Microsoft Word.

Dated: February 11, 2025
       New York, New York

Respectfully submitted,

*/s/ Carmine D. Boccuzzi, Jr.*
Carmine D. Boccuzzi, Jr.
Abena Mainoo
Leila Mgaloblishvili
cboccuzzi@cgsh.com
amainoo@cgsh.com
lmgaloblishvili@cgsh.com
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
T: 212-225-2000
F: 212-225-3999

*Attorneys for Defendant Standard Chartered Bank*